**Charles I. COHEN, Plaintiff,**

v.

**STANDARD INSURANCE COMPANY, Defendant.**

**No. CIV. A. 00–5971.**

United States District Court,
E.D. Pennsylvania.

May 17, 2001.

---

John N. Ellison, Anderson, Kill, Olick & Oshinsky, P.C., Philadelphia, PA, Rhonda D. Orin, Michele A. Gallagher, Anderson, Kill & Olick, LLP, Washington, DC, for plaintiff.

Standard Ins. Co., Portland, OR, pro se.

Deborah Weinstein, Eckert Seamans Cherin & Mellott, LLC, Philadelphia, PA, for defendant.

Marcia E. Bove, U.S. Dept. of Labor, Office of Solicitor, Plan Benefits Security Div., Washington, DC, for movant.

## MEMORANDUM

NEWCOMER, District Judge.

This is an action to collect benefits under an insurance plan pursuant to the Employee Retirement Income Security Act ("ERISA") section 502(a)(1)(b), 29 U.S.C. 1132(a)(1)(B).[1] The parties' cross motions for summary judgment, and their responses thereto, are now before the Court.

## I.  BACKGROUND

Plaintiff, Charles I. Cohen, is a 55 year old labor law partner at the Washington, D.C. office of Morgan, Lewis & Bockius LLP ("Morgan Lewis"), a law firm with its administrative offices in Philadelphia, Pennsylvania. The defendant, Standard Insurance Company ("Standard"), is an insurance company with its principal place of business in Portland, Oregon.

In 1992, defendant sold Morgan Lewis a Group Long–Term Disability Insurance Policy (the "Plan") which had an effective date of April 1, 1992. The Plan provides partial disability coverage to a participant who is "working in [his] own occupation but, as a result of Sickness, Injury or Pregnancy, [is] unable to earn more than the Own Occupation Income Level." The Plan further provides that "Sickness means your sickness, illness or disease" and that "Injury means an injury to your body." Additionally, an attorney's "Own Occupation" means his "speciality in the practice of law."

Plaintiff joined Morgan Lewis as a partner in September 1996, after he completed a two year presidential appointment with the National Labor Relations Board. In October, 1996 plaintiff experienced chest

---

1.   Section 502 provides that:
   A civil action may be brought—
      (1)  by a participant or beneficiary—
         (B)  to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
   29 U.S.C. 1132(a)(1)(B).

pains which led him to seek medical treatment. Upon receiving medical treatment, plaintiff's doctors diagnosed him with serious coronary artery disease. Among other things, plaintiff's left anterior descending artery was 95 percent blocked, and his right coronary artery was 100 percent blocked. Consequently, plaintiff received a stent in the left anterior descending artery, but the right coronary artery remained completely blocked.[2]

Despite participating in various trials of medication intended to improve his condition, plaintiff again began to suffer chest pain at work. These pains would last from ten minutes to nine hours, and in May, 1998, plaintiff underwent a second cardiac catheterization. This procedure revealed that plaintiff's left anterior descending artery was 50% blocked, and his right coronary artery remained 100% blocked.

Plaintiff's treating cardiologist, Dr. David Pearle, concluded that plaintiff was experiencing angina due to myochardial ischemia. Additionally, Dr. Pearl recommended that plaintiff reduce his work hours because he determined that plaintiff's condition was aggravated by work stress. In light of Dr. Pearle's recommendation, plaintiff reduced his workload and began a part time schedule in August 1998 which resulted in a reduction in plaintiff's compensation.

Then, on August 18, 1998, plaintiff submitted a Long Term Disability Claim to defendant stating that he suffered from coronary artery disease, and that he experiences chest pain when under stress at work. In a November 17, 1998 letter, defendant denied plaintiff's claim concluding that plaintiff was not partially disabled. Defendant's conclusion was based upon the opinions of two consulting physicians, Dr.

Bradley Fancher who is board certified in internal medicine, and Dr. Henry DeMots who is a board certified cardiologist and professor of cardiology at Oregon Health Sciences University. More specifically, Dr. DeMots concluded that plaintiff can perform both sedentary work and work which requires significant physical activity. In addition, Dr. DeMots concluded that work stress would not place the plaintiff at risk of a heart attack or death. Dr. Fancher's opinion concurred with Dr. DeMots' opinion. These doctors formed their opinions after reviewing the medical records assembled in connection with plaintiff's claim, but neither examined plaintiff or consulted with plaintiff's treating physicians before providing their opinions. Plaintiff's claim was further denied because defendant found that plaintiff had not actually altered his work hours, his travel schedule or his compensation as plaintiff had claimed.

On January 11, 1999, plaintiff appealed this denial to defendant, and again provided records showing his reduced hours and compensation. Plaintiff also submitted letters from his treating physicians including Dr. Pearle. Among other things, Dr. Pearle's letter recommended that plaintiff retire, or make "major job changes" "based upon the occurrence of angina and myocardial ischemia on a recurrent basis." In addition, Francis M. Malone, the managing partner of Morgan Lewis, and Charles P. O'Connor, then Chairman of the Labor and Employment section of Morgan Lewis, both wrote to defendant on plaintiff's behalf in support of his appeal. Mr. O'Connor's letter stated that Mr. O'Connor had personally observed plaintiff

---

2. Notably, there is a history of heart disease in plaintiff's family. His father suffered a heart attack when he was 50 years old, and several of his other relatives have suffered heart disease.

suffer a cardiac event in the middle of a business meeting.

Defendant submitted plaintiff's appeal to Dr. DeMots for his evaluation, and on February 22, 1999, defendant reaffirmed its denial of plaintiff's claim. Defendant denied plaintiff's claim primarily because Dr. DeMots concluded that the risk of a heart attack does not increase when one works. Dr. DeMots acknowledged that some medical literature supports the view of plaintiff's physician, Dr. Pearle, that work related stress is a risk for patients with atherosclerosis, but noted that neither the American College of Cardiology ("ACC") nor the American Heart Association ("AHA") support this view. Further, Dr. DeMots stated that "the impact of work is negligible and is just as likely to be positive rather than negative."

After defendant denied plaintiff's appeal, defendant forwarded plaintiff's file to defendant's Quality Assurance Unit for additional review. At that time, plaintiff submitted a letter from Dr. Pearle that addressed the opinions of Dr. DeMotts. Defendant again denied plaintiff's claim in a letter dated August 10, 1999. Once again, defendant concluded that plaintiff's medical condition did not prevent him from working full time, and contended that plaintiff had not actually altered his work hours, his travel schedule and his income.

The determination of the Quality Assurance Unit exhausted the administrative review of plaintiff's claim. However, on December 10, 1999 plaintiff requested reconsideration of his claim, and submitted evidence that plaintiff had altered his work hours, his travel schedule, his practice and his income. Then, on January 10, 2000, plaintiff supplemented his request with a letter that advised defendant that he had recently applied for life insurance with defendant. That letter further explained that defendant denied plaintiff life insurance on January 4, 2000 because plaintiff was "an unacceptable mortality risk."

On January 28, 2000, defendant denied plaintiff's request for reconsideration in a letter. In that letter, defendant abandoned its claim that plaintiff had reduced his hours, and his compensation, but continued to maintain that plaintiff's heart condition would not be adversely affected by work related stress. Additionally, that letter attempted to address plaintiff's argument that defendant's denial of plaintiff's claim was flawed because defendant's physicians had not treated plaintiff.

Then, on July 24, 2000, plaintiff's counsel submitted another request that defendant reconsider plaintiff's claim. With this request, plaintiff submitted a medical report completed by Dr. Alan Rozanski, a nationally recognized cardiologist affiliated with both the University Hospital of Columbia University College of Physicians and Surgeons, and the St. Luke's Roosevelt Hospital Center. After examining plaintiff, Dr. Rozanski concluded that plaintiff's heart condition required plaintiff to reduce his work hours, or to stop working. Dr. Rozanski formed his opinion after examining plaintiff on May 30, 2000. Plaintiff also submitted several articles from established medical publications that document the link between work stress and an increased risk of accelerating existing heart disease.

Upon a review of plaintiff's July 24, 2000 request for reconsideration, defendant once again denied plaintiff's claim in a September 28, 2000 letter. In that letter, defendant again argued that its physicians' opinions were not flawed because they did not treat plaintiff, and contended that there is no link between work stress and an increased risk of accelerating existing heart disease. To support that view, defendant included an article with the letter

that set forth the position of the AHA and ACC.[3] However, that article sets forth the position of the AHA and ACC for patients who do not already suffer from heart disease stating that it applies to "prevention in persons without established [coronary heart disease]. Once coronary atherosclerotic disease becomes clinically manifest, the risk for future coronary events is much higher than for patients without [coronary heart disease] ..." This letter represented the final communication between the parties prior to the filing of the instant suit.

The Plan empowers defendant full and complete discretion to make all decisions regarding coverage stating:

> [Standard has] full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.
>
> [Standard's] authority includes, but is not limited to:
>
> 1. The right to resolve all matters when a review has been requested;
> 2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;
> 3. The sufficiency and the amount of information we may reasonably require to determine a., b., or c., above.

Subject to the review procedures of the Group Policy, any decision [Standard] make[s] in the exercise of our authority is conclusive and binding.

In this suit, plaintiff alleges that defendant wrongfully denied plaintiff partial disabili-

ty benefits under the Plan. As explained above, the parties have filed cross motions for summary judgment.

## II. DISCUSSION

■ The standards by which a court decides a summary judgment motion do not change when the parties file cross motions. *See Southeastern Pa. Transp. Auth. v. Pennsylvania Pub. Util. Com'n,* 826 F.Supp. 1506 (E.D.Pa.1993). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c) (1994).

■ When federal courts review whether an Administrator wrongfully denied disability benefits to a claimant, and the disability plan grants the Administrator or fiduciary discretionary authority to determine eligibility benefits, or to construe terms of the plan, that review is limited as federal courts may only decide whether the denial was arbitrary or capricious. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). "Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn a decision of a Plan Administrator only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3rd Cir.1993) (quoting *Adamo v. Anchor Hocking* Corp., 720 F.Supp. 491, 500 (W.D.Pa.1989)).

■ However, when an Administrator or fiduciary operates the plan with a con-

---

**3.** Scott M. Grundy et. al., *Assessment of Cardiovascular Risk by Use of Multiple Risk Fac-* tor *Assessment Equations* 1348, 1349 (Oct. 1999).

flict of interest, courts must weigh the conflict as a factor in determining whether there was an abuse of discretion. *See Firestone*, 489 U.S. at 115, 109 S.Ct. 948. Accordingly, in *Pinto v. Reliance Standard Life Ins. Co.*, the Third Circuit held that when an insurance company funds and administers a plan, it has a conflict of interest, and courts must apply a heightened form of the arbitrary and capricious standard of review. *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 387 (3rd Cir.2000).

■ In *Pinto*, the Third Circuit adopted a "sliding scale" approach to review under a "heightened" arbitrary and capricious standard, and concluded that the intensity of review should increase in proportion to the intensity of the conflict. *See Friess v. Reliance Standard Life Ins. Co.*, 122 F.Supp.2d 566, 572 (E.D.Pa.2000) (citing *Pinto*, 214 F.3d at 393). When determining the severity of a conflict, courts may consider the following factors: the sophistication of the parties, the information accessible to the parties, the exact financial relationship of the parties, the information accessible to the parties, the exact financial relationship between the insurer and the employer, and the current status of the fiduciary and the stability of the employing company. *See Pinto*, 214 F.3d at 392.

In this case, the parties do not dispute that defendant had discretionary authority to determine whether plaintiff qualified for benefits, nor do they dispute that defendant both funded and administered the Plan. However, the parties disagree over what standard of review the court should apply, and whether defendant wrongfully denied plaintiff benefits.

■ Accordingly, the Court first decides the appropriate standard of review to apply here. As the *Pinto* Court stated, "heightened scrutiny is required when an insurance company is both plan adminis-

trator and funder." *Pinto*, 214 F.3d at 392. When applying the heightened form of the arbitrary and capricious standard, courts should be deferential, but not absolutely deferential, and " '[t]he greater the evidence of conflict on the part of the administrator, the less deferential [the] abuse of discretion standard.' " *See id.*, at 392 (quoting *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 297 (5th Cir. 1999)). Thus, courts must not only look at the result and whether it is supported by reason, but also at the process by which that result was achieved. *See Pinto*, 214 F.3d at 392.

■ Here, there is substantial evidence that defendant's conflict played a role in its decision to deny plaintiff's claim. First, defendant concluded that plaintiff had not reduced his work hours, his travel schedule, or his compensation, and continued to adhere to that conclusion in the face of credible contradictory evidence. Second, that defendant relied upon the opinion of its non treating physicians over plaintiff's treating physicians is suspect. Defendant's physicians, one of whom is not even a cardiologist, based their opinions on cold test results contained in plaintiff's medical files, while plaintiff's treating physicians concluded that plaintiff should reduce his work hours after examining plaintiff and forming professional opinions based upon what they personally observed. Other courts have admonished Standard for this practice. *See e.g., Palmer v. University Med. Group*, 994 F.Supp. 1221, 1235 (D.Or. 1998); *Clausen v. Standard Ins. Co.*, 961 F.Supp. 1446, 1455 (D.Colo.1997).

Other evidence further demonstrates that defendant's conflict played a significant role in its decision to deny plaintiff's claim. Looking at defendant's final decision, this Court "sees a selectivity that

appears self serving,"[4] not only when it adopted its non treating physicians' opinions, but also when it rejected the medical evidence that plaintiff submitted to support his contention that plaintiff's work stress increases his risk of heart complications. Indeed, in its September 28, 2000 letter, defendant recognized that Dr. Rozanski has spent the majority of his career investigating the relationship between atherosclerotic heart disease and stress, is a thoroughly credentialed cardiologist, and has concluded that such a relationship exists. That letter further acknowledged that articles from well established medical publications also conclude that a relationship exists. However, defendant rejected those opinions, in part because of the position of the ACC and AHA. However, as explained earlier, the article defendant relied upon to prove that the position of the ACC and AHA is contrary to plaintiff's position sets forth the position of the AHA and ACC for patients *who do not* already suffer from heart disease. In this case, both sides agree that plaintiff suffers from heart disease. That defendant credited plaintiff's evidence in support of his claim, rejected it, and did so while relying upon inapposite medical literature is disturbing, and presents evidence that defendant's conflict fueled its denial of plaintiff's claim.[5]

The record reveals more evidence supports this Court's conclusion that defendant's conflict improperly influenced its decision to deny plaintiff's claim. However, the evidence the Court has already reviewed in today's opinion warrants a heightened standard of review that does not afford substantial deference to the Administrator's decision. Accordingly, the Court views the facts before the administrator with "a high degree of skepticism." *See Pinto,* 214 F.3d at 395.

Defendant argues that even if a conflict of interest existed, under the additional factors a court may consider under *Pinto,* its conflict played an insignificant role in its decision to deny plaintiff's claim. The Court disagrees. Although plaintiff is an attorney, he is a labor attorney and there is no evidence in the record that he is sophisticated in insurance or medical matters. Defendant argues that plaintiff was given access to all of the information defendant relied upon to make its decision, was represented by counsel, and that Morgan Lewis purchased a group life insurance policy from defendant in 1997. However, no evidence suggests that plaintiff's sophistication, or any other factor made it less likely defendant's conflict of interest played a role in its decision to deny plaintiff's claim. Indeed, the evidence the Court recounted above suggests otherwise. Moreover, defendant always retained the power to grant or deny plaintiff's claim, and in a case such as plaintiff's, Standard had "an active incentive to deny [plaintiff's claim] in order to keep costs down and keep [itself] competitive so that companies will choose to use [it] as their [insurer] ..." *Pinto,* 214 F.3d at 388.

■ Having decided the appropriate standard of review, the Court turns to whether defendant arbitrarily and capriciously denied plaintiff's claim. First, the evidence demonstrating that defendant's

---

4. *Pinto,* 214 F.3d 377.

5. Now, defendant has supplemented the administrative record with an affidavit from Dr. DeMots that refers the Court to additional articles that purport to deny the link between work stress and heart disease. However,

whether other articles exist to support Dr. DeMots' conclusion is irrelevant. That defendant relied upon an inapposite article is evidence that defendant's conflict played a role in its decision to deny plaintiff's benefits regardless of the existence of other articles.

conflict influenced its decision to deny plaintiff's claim, also demonstrates that plaintiff arbitrarily and capriciously denied plaintiff's claim.

Additionally, at the conclusion of plaintiff's claim process, defendant's denial merely rested upon its conclusion that objective medical evidence does not support the link between work stress and increased risk of accelerating heart disease. However, the Plan does not state that plaintiff is required to prove his claim through the presentation of objective medical evidence.[6] Instead the plan requires a claimant to prove disability "as a result of sickness, injury, or pregnancy," and sickness is defined as "sickness, illness, or disease." [7]

In a closely analogous case, the Third Circuit held that it was arbitrary and capricious for the plan administrator to require the claimant to submit clinical evidence of the etiology of his allegedly disabling symptoms when the Plan did not impose such a requirement. *See Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 442–43 (3rd Cir.1997). In *Mitchell,* the Third Circuit concluded that the plaintiff had submitted sufficient evidence of his disability claim when he provided copies of his medical records, his medical history, and his treating physicians' opinions that he was disabled. *See id.*

■ Here, defendant admits that plaintiff suffers from serious heart disease, does not dispute his medical history, his current symptoms or the qualifications of his treating physicians. Moreover, plaintiff submitted substantial objective evidence, namely the opinions of his treating physicians, and objective medical literature, to defendant that he is disabled. Thus, plaintiff has done more than what was required of him under the specific terms of the Plan. Yet, defendant still denied his claim. Under these circumstances, and in light of the evidence demonstrating that defendant's conflict influenced its decision to deny plaintiff's claim, the Court finds that defendant arbitrarily and capriciously denied plaintiff's claim for disability benefits. The Court further concludes that defendant is entitled to benefits under the Plan, and remand is inappropriate here. As explained above, plaintiff has done more than what was required of him under the specific terms of the Plan to prove he is entitled

**6.** Although Standard's denial letters do not use the words "objective medical evidence", Dr. Demots' opinion, as expressed in an October 27, 1998 letter he wrote to Standard, says that plaintiff's symptoms are all subjective, and "are not accompanied by objective evidence of ischemia." However, the plan never requires a claimant to prove his disability with objective evidence. Moreover, it is clear that defendant's decision to deny plaintiff's claim ultimately rested upon Dr. DeMots' opinion, and his conclusion that objective medical literature denies the link between work stress and an increased risk of heart disease. Thus, defendant did deny plaintiff's claim because it concluded a lack of objective medical evidence supported plaintiff's claim.

**7.** In its response, defendant contends that under the section entitled "Allocation of Author-

ity", the Plan grants defendant "the right to determine ... d. [the] sufficiency and the amount of information we may reasonably require to determine [the claimant's eligibility for benefits]". Accordingly, defendant argues the Plan empowers defendant to require plaintiff to submit objective medical evidence in support of his claim. However, defendant's reading of the Plan is overly broad, especially in light of the more specific language that sets out what a claimant must do to prove he is disabled. At best, the above clause is ambiguous, and under the rule of *contra proferentem,* the language must be construed against the defendant. *See Heasley v. Belden & Blake Corp.,* 2 F.3d 1249, 1257 (3rd Cir.1993) (adopting the doctrine of *contra proferentem* in ERISA insurance cases to construe ambiguous terms of a plan).

to disability benefits under it. Additionally, the Administrator considered all of the evidence in the administrative record, and defendant fails to argue that the administrative record lacks any necessary evidence.[8] Because the defendant arbitrarily and capriciously denied plaintiff's claim, and because the Court has fully reviewed the administrative record, determined that plaintiff is disabled within the meaning of the Plan, and found that the administrative record is complete, the Court will grant plaintiff's Motion for Summary Judgment and the relief he seeks, and will not remand this case. *See Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1327–28 (11th Cir.2001) (holding the district court's decision not to remand was appropriate where the administrative record was complete, the administrator reached an arbitrary and capricious result, and the district court concluded the claimant was disabled); *see also Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1464 (9th Cir.1997) (suggesting burden is on plan to build up adequate and relevant information to make a decision on the claim); *Sandoval v. Aetna Life and Casualty Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992) (denying beneficiary's request for remand to consider evidence never presented to administrator before administrator completed review); *Friess v. Reliance Standard Life Ins. Co.*, 122 F.Supp.2d 566, 573 (E.D.Pa.2000) (explaining that the Court's decision should rest upon "the historic facts that informed the administrator's decision").

An appropriate Order will follow.

### ORDER

AND NOW, this 17th day of May, 2001, the Court hereby ORDERS as follows:

1. Upon consideration of attorney John N. Ellison's Motion for admission *pro hac vice* of attorney Rhonda D. Orin on plaintiff's behalf, said Motion is GRANTED.

2. Upon consideration of attorney John N. Ellison's Motion for the admission *pro hac vice* of attorney Michele A. Gallagher on plaintiff's behalf, said Motion is GRANTED.

3. Defendant;s Motion for Summary Judgment is DENIED.

4. Plaintiff's Motion for Summary Judgment is Granted in part, and DENIED in part. It is GRANTED to the extent that this Court ORDERS that:

    a. Defendant shall grant plaintiff's claim for disability benefits under the Plan.

    b. Plaintiff is entitled to all past due, present, and future disability benefits under the Plan.

    c. Defendant shall reimburse plaintiff for all premiums paid since he first filed his claim for disability benefits.

However, it is DENIED, for the time being, to the extent plaintiff moves for reimbursement of reasonable attorney's fees pursuant to § 502(g) of ERISA, 29 U.S.C. § 1132(g). Should plaintiff seek reimbursement for attorney's fees, he shall file an appropriate supplementary brief accompanied by proper evidence. Said brief shall not exceed four (4) pages, and shall be filed within five (5) days of the date of this order. Defendant's Response shall not exceed four (4) pages, and shall be filed within five (5) days of the date of service of said brief.

---

8. Indeed, in its pre trial memorandum, submitted in anticipation of trial, defendant states that "[d]efendant does not anticipate offering any documentary evidence beyond the Administrative File, which was submitted to the Court in support of the defendant's motion for summary judgment." (*Defendant's Pretrial Memorandum*, at 2).

The Court withholds issuance of a final order or judgment until it resolves plaintiff's claim for attorney's fees.

AND IT IS SO ORDERED.