Mary FRIESS, Plaintiff,

v.

RELIANCE STANDARD LIFE INSURANCE CO., Defendant.

No. 99–CV–5010.

United States District Court, E.D. Pennsylvania.

Aug. 29, 2001.

Arlene Glenn Simolike, Rachel Benner DeAngelo, Arelen Glenn Simolike Aooc., Philadelphia, PA, for plaintiff.

Joshua Bachrach, Rawle and Henderson, Philadelphia, PA, for defendant.

### EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff Mary Friess claims that defendant Reliance Standard Life Insurance Company ("Reliance") wrongly denied her claim for long-term disability ("LTD") ben-

efits.[1] Defendant's renewed motion for summary judgment is now before the Court. For the reasons set forth below, the motion will be granted.

In November 2000, Reliance's original motion for summary judgment was denied without prejudice. *See Friess v. Reliance Standard Life Ins. Co., et al.,* 122 F.Supp.2d 566 (E.D.Pa.2000) ("November Opinion"). In the November Opinion, I extended the deadline for filing dispositive motions, and authorized the parties to gather evidence on Reliance's conflict of interest and the ways in which it impacted upon the heightened arbitrary and capricious standard of review established by the Third Circuit. *See Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377 (3d Cir. 2000).

This opinion involves two inquiries. First, I must determine where this case belongs on *Pinto*'s "sliding scale" of heightened arbitrary and capricious review. Second, I must apply that standard to my review of Reliance's decision and the process used to reach that decision.

### Background[2]

On May 25, 1994, plaintiff Mary Friess fell from a platform at work and broke her left ankle.[3] Friess expected that the injury would heal and allow her to return to work. However, her doctors eventually determined that the injury was permanent. Accordingly, on January 19, 1996, Friess submitted a claim for LTD benefits under the plan maintained by her employer. The

1. Because the insurance policy at issue is an employee benefit plan, this action is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* This Court has jurisdiction over the case under 28 U.S.C. § 1331, as it presents a question arising under federal law.

2. The background facts are set forth at great length in the November Opinion, familiarity with which is assumed. As appropriate at

summary judgment, disputed facts have been construed in the manner most favorable to plaintiff as the non-moving party.

3. Friess was a merchandise associate at John Wanamaker's, a division of Woodward and Lothrop, at the time of her allegedly disabling injury. Woodward and Lothrop ceased operations in 1996.

benefit plan was insured under a group LTD policy ("the policy") issued and administered by Reliance.[4]

On December 13, 1996, Reliance issued a letter denying Friess's claim. (Defendant's Renewed Motion for Summary Judgment, Exhibit B ("D.Ex. B") at RSL000029). Friess submitted a written request for a review of the denial of benefits on February 8, 1997, enclosing copies of her medical records. On March 14, 1997, Reliance upheld the denial of Friess's claim, stating: "In reviewing the medical information submitted by your doctors, we could find no medical [sic] from May 26, 1994 to November 28, 1994.... Without this information, you do not have a claim, as there must be documented proof that a total disability existed on the date you last worked." (D.Ex. B at RSL000031). On October 1, 1999, Friess filed suit against Reliance in the Philadelphia County Court of Common Pleas. Reliance removed the action to federal court.

## Summary Judgment

Summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The court should determine whether there are factual issues that merit a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505.

At summary judgment, the non-moving party receives the benefit of all reasonable inferences. *See Sempier v. Johnson and Higgins*, 45 F.3d 724, 727 (3d Cir.1995). The motion should be granted if the record taken as a whole "could not lead a rational trier of fact to find for the nonmoving party, [and] there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## Standard of Review Under ERISA

The parties agree that I must review Reliance's decision to deny Friess's claim under the standard established in *Pinto*. They disagree over what standard of review *Pinto* requires, and whether Reliance wrongly denied ERISA benefits. I begin, therefore, with a description of the "heightened" arbitrary and capricious standard of review articulated in *Pinto*.

■ When the administrator of an ERISA plan has been given discretion, its decisions normally are reviewed under an "abuse of discretion" or "arbitrary and capricious" standard, and will not be disturbed if reasonable. *See Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir.1997) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)).[5] Under that highly deferential standard of review, a court must defer to the administrator's decision unless the decision "is not clearly supported by the evidence in the record or the administrator has failed to comply with

---

**4.** The parties agree that Friess was covered under the LTD policy at all relevant times.

**5.** The "arbitrary and capricious" standard is essentially the same as the "abuse of discretion" standard. *See Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45, n. 4 (3d Cir. 1993). *See also Nazay v. Miller*, 949 F.2d 1323, 1336 (3d Cir.1991); *Daniels v. Anchor Hocking Corp.*, 758 F.Supp. 326, 328–330 (W.D.Pa.1991).

the procedures required by the plan." *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 41 (3d Cir.1995). As the terms of the policy grant Reliance discretion, its decision must be reviewed under the deferential arbitrary and capricious standard.[6]

■ Because Reliance both administers the policy and pays out benefits, it operates under a conflict of interest, and its decisions are subject to heightened review under the arbitrary and capricious standard. *See Pinto*, 214 F.3d at 383. In *Pinto*, the Third Circuit neither abandoned the arbitrary and capricious standard when reviewing decisions of conflicted administrators, nor defined a uniform "heightened arbitrary and capricious" standard for all conflicted administrators. Rather, it adopted a "sliding scale" approach, instructing district courts to increase the intensity of review in proportion to the intensity of the conflict in a particular case. *See id.* at 392.

The Third Circuit observed that "the arbitrary and capricious standard may be a range, not a point ... [it is] more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is." *Pinto*, 214 F.3d at 392–93 (citations omitted). To arrive at the proper standard of review along that range, a district court may "take into account the sophistication of the parties, the information accessible to the parties, and the exact financial arrangement between the insurer and the company." *Id.* at 392. The court also may consider the current status of the fiduciary. *See id.*

■ In this case, those factors push the arbitrary and capricious standard to the least deferential end of its range. Although Friess has a high school education and many years of work experience as a merchandise associate in a department store, she lacks the "sophistication" of insurance agents who interpret and apply complicated contract language for a living. Reliance would be well positioned to self-deal given that considerable gap in experience and access to information. Moreover, Reliance did not present evidence of a financial relationship between it and its client that might have moderated Reliance's strong incentive to deny claims that are paid from its own coffers.[7] Nor was Reliance disciplined by a desire to maintain the satisfaction of its client, as Woodward and Lothrop ceased operations in 1996. Applying the *Pinto* factors to this case, therefore, I will examine the historic facts of record with a high degree of scrutiny.

**Application**

In the March 14, 1997 letter affirming its denial of benefits, Reliance clearly set forth its reasons for the denial. The letter indicates that Reliance could not credit the claim that a total disability had existed from May 26, 1994 when the earliest medical evidence of such a disability in Friess's records dated from November 28, 1994. Reliance measured the medical evidence submitted by Friess against the terms of the policy, which provides that Reliance will pay benefits if the insured:

---

**6.** In the November Opinion, I held that the language in the policy grants Reliance discretion over benefit determinations. *See Friess*, 122 F.Supp.2d at 574.

**7.** In *Pinto*, the Third Circuit suggests that a court can consider, for example, "whether the insurance contract is fixed for a term of years or changes annually, and whether the fee paid by the company is modified if there are especially large outlays of capital by the insurer." *Pinto*, 214 F.3d at 392.

1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy;

2) is under the regular care of a Physician;

3) Has completed the Elimination Period; and

4) submits satisfactory proof of Total Disability to us.

(D.Ex. B at RSL000010). Under the Policy, " 'Totally Disabled' and 'Total Disability' mean, that as a result of an Injury or Sickness, during the Elimination Period and thereafter an Insured cannot perform the material duties of any occupation." (D.Ex. B at RSL00005). The "Elimination Period" is defined as "a period of consecutive days of Total Disability [here, 90 days] ... for which no benefit is payable." (D.Ex. B at RSL00004).

■ Friess contends that her "total disability" began with her accident on May 25, 1994. The policy requires her to submit satisfactory proof of her total disability; that is, she must submit proof that she was totally disabled for 90 days following the date of the accident. However, the earliest medical evidence submitted dates from November of 1994, far beyond the end of the 90–day elimination period. The administrative record does not include proof that Friess was totally disabled during the elimination period. Weighing the evidence in the record against the clear language of the policy, the decision to deny Friess benefits appears reasonable.

*Pinto* instructs a district court to consider not only the reasonableness of the result, but also the process by which the result was achieved. *See Pinto,* 214 F.3d at 393. Under the heightened standard, Courts should examine the decisionmaking process used by the self-interested administrator. Procedural anomalies raise the likelihood of self-dealing, and move review toward greater scrutiny. *See id.* at 394.

In the November Opinion, I suggested that several procedural anomalies in this case might be severe enough to persuade a reasonable factfinder that Reliance's decision was the product of self-dealing rather than careful consideration. In particular, I was concerned that Reliance had sent just one letter to Dr. Peff, the physician who treated Friess during the elimination period, and that the letter contained a serious error.[8] The record clearly reveals, however, that Reliance notified Friess that her application could not move ahead without evidence from the two doctors who initially treated her ankle. Friess was informed in October 1996 that Reliance had not obtained records from Drs. Peff and Grossinger. (D.Ex. B at RSL000027). In another letter dated November 21, 1996, Reliance informed Friess that her claim would be closed if information from Drs. Peff and Grossinger was not received within 30 days. (D.Ex. B at RSL 000028). In the December 13, 1996 letter informing Friess that her claim had been denied, Reliance made it clear that, due to the absence of critical records from Dr. Peff and Dr. Grossinger, Friess had failed to meet the proof of loss requirement in the Policy. (D.Ex. B at RSL000029). In that letter, Reliance also informed Friess that she should include additional documentation to support the claim with her request for a review of the decision. (D.Ex. B at RSL000029). The record indicates that Reliance repeatedly urged Friess to submit the necessary records, and afforded her adequate time to do so. However, Friess never supplied medical records

8. The letter asked Dr. Peff for records from May 1, 1995 to the present. (D.Ex. B at RSL000026). Dr. Peff allegedly treated Friess in May of 1994, immediately following her injury, but was no longer treating her in May of 1995.

from the doctors who treated her injury during the six months immediately following her accident.

In the November Opinion, I also suggested that Reliance may not have credited the Social Security Administration's finding that Friess was disabled. The record on which Reliance made its decision, however, contained no records from the Social Security Administration. Although I afforded Friess an opportunity to explain how Reliance's conflict of interest might have tainted its decision to deny benefits, Friess submitted no evidence to suggest that Reliance failed to consider or accept evidence from the Social Security Administration.

## Conclusion

I have found that Reliance was acting under a serious conflict of interest and have reviewed Reliance's decision to deny benefits to Friess with heightened scrutiny. I conclude that, as a matter of law, Friess failed to establish that Reliance's decision to deny her long-term disability benefits was arbitrary and capricious under the applicable standard of review. Therefore, I will grant Reliance's renewed motion for summary judgment.

**AND NOW,** this day of August, 2001, it is **ORDERED** that Defendant's Renewed Motion for Summary Judgment (Docket Entry No. 14) is **GRANTED.**