Sharon Taylor **BROWN**, Plaintiff,

v.

**CONTINENTAL CASUALTY COMPANY**, Defendant.

No. 99–6124.

United States District Court, E.D. Pennsylvania.

Feb. 11, 2003.

Carl N. Martin, II, Philadelphia, PA, for Plaintiff.

June A. Taima, Christie, Pabarue, Mortensen and Young, Richard S. Margulies, Philadelphia, PA, for Defendant.

## OPINION

POLLAK, Judge.

Pending before this court are cross-motions for summary judgment filed by plaintiff Sharon Taylor–Brown and defendant Continental Casualty Company (the latter is a member of the CNA insurance group, and hereinafter will be referred to as "CNA"). The underlying claim, based on the Employee Retirement Income Security Act ("ERISA"), is that Ms. Taylor–Brown is suffering from "total disability" under the terms of a CNA insurance policy—a policy which was part of her benefits package as an employee of the Vanguard Group ("Vanguard")—and so is entitled to receive monthly payments. Because this court finds that there are issues of fact with regard to Ms. Taylor–Brown's coverage under the policy, both summary judgment motions will be denied.

### Ms. Taylor–Brown's policy

The policy under which Ms. Taylor–Brown seeks recompense commits CNA to "pay the Monthly Benefit for each month of Total Disability which continues after [180 days [1]]." Under the Long–Term Disability ("LTD") policy, " 'Total Disability' means that because of Injury or Sickness, the Insured Employee is: (1) continuously unable to engage in any occupation for which [s]he is or becomes qualified by education, training or experience; and (2) under the regular care of a licensed physician other than [herself]."

References to how exactly one proves "total disability" are scarce indeed within the policy. One provision states: "Written notice of claim must be given to Us within 30 days after the loss begins or as soon as reasonably possible." Another states: "Written proof of loss must be furnished to Us within 90 days after the end of the period for which We are liable." As for CNA's method of verifying claims, the policy confers on the insurer "the right to have a physician examine the Insured Employee as often as reasonably necessary while the claim is pending."

### Factual and procedural background

Ms. Taylor–Brown was an employee of Vanguard on September 6, 1996, the date she alleges she became unable to work. Initially, Ms. Taylor–Brown's incapacity was attributed to pneumonia and hypothyroidism; later, she was diagnosed with a condition known as fibromyalgia. In light of her medical condition, Ms. Taylor–Brown applied, pursuant to a Short–Term Disability ("STD") policy provided by Vanguard,[2] for disability benefits, and started receiving payments on or about September 16, 1996. The following list of events summarizes the various benefits determinations made by CNA, which culminated in the ultimate decision in March of 1999 to cease paying LTD benefits:

(1) CNA, which administered the STD program, decided that Ms. Taylor–Brown was no longer eligible for benefits as of January 31, 1997.

---

1. The policy provides for payment after the "Elimination Period," which is defined as the "period[ ] shown in the Schedule of Benefits which appl[ies] to the Insured Employee." The Schedule of Benefits, in turn, refers to Addendum 3, which lists the elimination period as 180 days for covered individuals in Class I—employees other than those in the upper management of Vanguard.

2. It appears that, with regard to the STD program, benefits were to be paid by Vanguard but eligibility determinations were to be made by CNA. With respect to the LTD program, however, CNA was responsible for both determining eligibility and making benefits payments.

CNA informed Ms. Taylor–Brown of this decision by letter of March 5, 1997.

(2) Ms. Taylor–Brown appealed the termination of the STD benefits. Her initial appeal was denied on June 12, 1997. However, on October 15, 1997, CNA, upon reconsidering its decision, granted Ms. Taylor–Brown retroactive benefits for the time period spanning April 9, 1997 to May 20, 1997 (the STD coverage ended by its terms on the latter date).

(3) CNA, on November 5, 1997, approved the payment of LTD benefits prospectively; in addition, Ms. Taylor–Brown received LTD payments for the time period spanning back to May 21, 1997 (the day after the STD benefits ended).

(4) By letter of March 26, 1999, CNA informed Ms. Taylor–Brown that it would terminate her LTD benefits on May 31, 1999.

CNA explained that it would terminate the LTD benefits because it could "not identify sufficient significant medical and/or clinical findings to support your total disability or meet the criteria for impairment." The March 26, 1999 letter informing Ms. Taylor–Brown of the termination of her benefits went on to define the requisite medical evidence:

Medical evidence means medical signs and findings, established by medically acceptable diagnostic techniques, which show the existence of a medical impairment that results from anatomical or physiological abnormalities which could reasonably be expected to produce the alleged symptoms. Subjective complaints shall not alone be conclusive evidence of disability.

**The medical evidence**

CNA's insistence that the "medical evidence" required to establish disability constitute more than "subjective complaints," while not mentioned in the policy itself, had been voiced to Ms. Taylor–Brown previous to her receipt of the March 1999 benefits-termination letter. When CNA first learned of the diagnosis of fibromyalgia in November of 1996, Ms. Taylor–Brown was advised that she would receive "no further [STD] benefits without objective findings." Soon thereafter, CNA chose to terminate the STD payments. CNA advised by letter of March 5, 1997:

In order for us to determine if you are totally disabled, your doctors must be able to provide medical evidence of a physically disabling impairment that would prevent you from performing the substantial and material duties of your regular occupation.

As noted above, Ms. Taylor–Brown appealed the termination of her STD benefits to a CNA "Appeals Committee." The appeal was initially denied, and a June 12, 1997 letter from CNA to Ms. Taylor–Brown's attorney reported that the following medical records had been reviewed in reaching that decision:

Dr. Michael Warner, records of September 9, 1996—September 26, 1996; Dr. Robert Promisloff, report of September 17, 1996; Dr. Lawrence Katin, report of September 5, 1996; Dr. Ronald Krauser, reports dated November 11, 1996—May 1, 1997; Dr. Arnold Levinson, records dated September 26, 1996—November 11, 1996; Bryn Mawr Rehab/Dr. John J. Kraus, records of January 21, 1997—March 17, 1997; Dr. June M. Fry, report dated May 6, 1997; and Dr. Sandra C. Gilmour, report dated March 24, 1997.

Vanguard's benefits manager, after learning of the benefits decision, wrote to CNA, informing the insurers that Ms. Taylor–Brown had recently been examined by Dr. Lawrence Leventhal, the Associate

Chief in the Graduate Hospital's Division of Rheumatology, who "feels that Ms. Brown is unable to work." The Appeals Committee "re-reviewed" Ms. Taylor–Brown's file along with certain additional medical documentation:

Dr. June M. Fry, reports dated May 7, 1997—August 14, 1997; Dr. Sandra C. Gilmour, report dated August 7, 1997; Dr. Ronald E. Krauser, report of July 30, 1997; and Dr. Lawrence J. Leventhal, report of September 4, 1997.

CNA commissioned Dr. Albert Ziffer to conduct an independent review of Ms. Taylor–Brown's file. Dr. Ziffer wrote in his resultant report:

It was not until 4–9–97, with the visit to Dr. Krauser, that all the physicians began to make a clear case that the claimant was unable to return to her job. Since that time, multiple physicians, all specialists, have verified Ms. Brown's inability to do any type of work. There [sic] basis is only subjective symptoms of sleep deprivation and pain, as described by the claimant, and finding of tender FM points. I believe that the opinion of these specialists must be accepted for the period commencing 4–9–97.

Despite his conclusion that Ms. Taylor–Brown should be considered totally disabled, Dr. Ziffer listed "certain problems with this claimant's evaluations." He also observed that while many specialists had found the claimant unable to work, they all placed a temporal limitation on their prognoses by stating that she could not work "at this time." Dr. Ziffer also added a caveat to his conclusion: "[I]f it can be determined that Ms. Brown has continued to drive and do her [activities of daily living], then I would alter my opinion to state instead that she **has** been able to do her job all along."

By letter of October 15, 1997, Cheryl Sauerhoff of the CNA Appeals Committee informed Ms. Taylor–Brown that her STD benefits would be reinstated retroactive to April 9, 1997. The letter explained the shift in position as follows:

We have requested an independent review of your file by a Medical Consultant which had rendered the opinion that the medical records prior to April 9, 1997 did not provide substantive objective evidence of any condition or functional impairment that would have prevented you from performing the duties of your sedentary occupation. As of April 9, 1997 the medical documentation consistently supported the severity of your condition that verified your inability to do any type of work. Multiple specialists concluded that the subjective symptoms of sleep deprivation, pain and tender fibromyalgia trigger points clearly substantiated the severity of your condition as of April 9, 1997.

On November 5, 1997, soon after granting the retroactive STD benefits, CNA granted LTD benefits retroactive to May 21, 1997, and also expressed its intention to make payments prospectively. The LTD payments continued for some time, but a Dr. Eugene Truchelut, after reviewing the case for CNA in early 1999, reported that he did "not see any evidence of functional limitations that would preclude [Ms. Taylor–Brown] from performing her sedentary job based on the available current information." Dr. Truchelet based his conclusions largely on his interpretation of a Functional Capacities Evaluation ("FCE") conducted on Ms. Taylor–Brown in November of 1998, and stated that "there is insufficient medical evidence to assess her current physical status, other than the FCE.... There are no reports from her treating physicians describing physical examinations or results of other studies for nearly 18 months. The previous examinations were all fairly benign, but her physicians insisted that she was in a fully disabled status...." Soon after Dr.

Truchelet informed CNA of his assessment, Ms. Taylor–Brown was informed, by letter of March 26, 1999, that she no longer qualified for LTD benefits.

When the plaintiff's principal treating rheumatologist, Dr. Krauser, heard of the benefits cancellation, he wrote CNA to "state categorically that [he] disagree[d] with the findings summarized in [the letter of cancellation]." Specifically, he criticized CNA for failing to seek the counsel of a rheumatologist in evaluating the case. Dr. Leventhal (a rheumatologist) wrote separately to opine that "[FCEs] are of little value in chronic musculoskeletal pain syndromes" because Ms. Taylor–Brown's condition is not one "that gives her weakness but one in which she has pain," which may not be measured objectively. Nonetheless, Dr. Leventhal pointed to two objective findings supporting a disability diagnosis: (1) "marked paracervical and paralumbar spasm with loss of the cervical and lumbar lordosis" and (2) "classic fibromyalgia tender points."

Ms. Taylor–Brown appealed the latest termination of benefits to the Appeals Committee; the appeal was rejected by letter of August 27, 1999.

While pursuing her action against CNA, Ms. Taylor–Brown applied for Social Security benefits. As part of her application process, she was examined on March 7, 2000 by Dr. Francis X. Burke, III, who concluded that "it would be very difficult for Mrs. Brown to perform any work activities at this time. I believe that her over-riding depression and associated labile affect would make it difficult for her to be put in a work environment. Her chronic fatigue, polyarthralgias, [and] myalgias would restrict her from performing anything but light work with limited lifting and bending." The Social Security Administration ("SSA"), apparently after considering Dr. Burke's report, denied Ms. Taylor–Brown's application, opining that she was capable of returning to previous employment as a restaurant manager—a position CNA suggests is more strenuous than the plaintiff's previous position at Vanguard.[3]

**Standard of review**

■ As a general rule, a reviewing court applies a *de novo* standard of review to a plan administrator's denial of ERISA benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). However, when the plan grants discretionary authority to the administrator to determine eligibility for benefits, the reviewing court must confine its inquiry to determining whether a denial of benefits is "arbitrary and capricious." *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am.,* 222 F.3d 123, 129 (3d Cir.2000). In the case at bar, CNA and Ms. Taylor–Brown have stipulated that *de novo* review is appropriate. The stipulation seems a reasonable one: there is no language in the policy specifically granting discretionary authority to CNA—the policy requires "written proof of loss," but does not specify that CNA is to be the sole arbiter of the sufficiency of that proof.[4] Pursuant to the

---

**3.** While the record is not entirely clear on the matter, it appears that Ms. Taylor–Brown has submitted three separate applications to the SSA. The first was denied, seemingly due to a procedural failure: sufficient medical records had not been provided to the SSA. The second application (described in the text) was that in which Dr. Burke was called upon to evaluate Ms. Taylor–Brown. The most recent application process (during which yet another doc-tor—Dr. A. Cuozzo—evaluated the plaintiff), like the previous two attempts, was unavailing for Ms. Taylor–Brown; she was again denied benefits.

**4.** *See Starita v. NYLCare Health Plans, Inc.,* No. CIV. A. 98–5375, 2000 WL 330038, at *3 (E.D.Pa. Mar.29, 2000) ("[T]he mere fact that a plan requires proof or satisfactory proof of the applicant's claim … does not give the

stipulation, this court will review CNA's decision to deny Ms. Taylor–Brown's disability benefits *de novo*.

### Scope of materials considered by the court

■ CNA suggests that, in deciding this case, the scope of the court's review should be limited to those materials considered by CNA in reaching its coverage decision. However, it is the law of this circuit that "a district court exercising *de novo* review over an ERISA determination between beneficiary claimants is not limited to the evidence before the Fund's Administrator." *Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176, 1184–85 (3d Cir.1991). As explained below, the CNA claims file does not definitively establish either disability or non-

disability. Therefore, this court will look beyond the file to address the pending cross-motions.

### Plaintiff's motion for summary judgment

■ One of CNA's actions of which Ms. Taylor–Brown complains is the company's reaction to its own reviewing physician's report. Dr. Truchelut, in 1999, found "insufficient medical evidence to assess [Ms. Taylor–Brown's] current physical status, other than the FCE." Ms. Taylor–Brown argues that at that point, CNA, rather than seeking further medical evidence, inappropriately jumped to the conclusion that plaintiff did not suffer from total disability. A more appropriate reaction to Dr. Truchelut's report, plaintiff suggests, would have been to ask the treating physi-

employee adequate notice that the plan administrator is to make a judgment largely insulated from judicial review by reason of being discretionary."); *McBride v. Cont'l Cas. Co.*, No. CIV. A. 97–4625, 1999 WL 301811, at *4 (E.D.Pa. May 11, 1999) ("Simply requiring written proof is not a grant of discretion to the plan administrator."); *see also Norris v. Cont'l Cas. Co.*, No. CIV. A. 00–1723, 2000 WL 1428681, at *1 (E.D.Pa. Sept.27, 2000) (noting conflicting results in this district's courts but permitting *de novo* discovery while the decision on the standard of review was pending). *But see Murphy v. Metro. Life Ins. Co.*, No. CIV. A. 01–1351, 2001 WL 1167489, at *3 (E.D.Pa. Sept.14, 2001); *Kutner v. UNUM Life Ins. Co. of Am.*, No. CIV. A. 99–800, 2000 WL 295104, at *5 (E.D.Pa. Mar.20, 2000) (both applying arbitrary and capricious review to a policy, like that at issue in *Starita*, that required "proof" of disability).

In a case decided subsequent to *Starita* and *Kutner*, the Third Circuit had before it an insurance policy that required applicants to submit "satisfactory proof" of "Total Disability" before benefits would be paid. *Pinto v. Reliance Standard Life. Ins. Co.*, 214 F.3d 377, 379 (3d Cir.2000). The court stated that "[i]t is undisputed that [the insurer] had discretion to interpret the plan." *Id.* (In a prior phase of the same litigation, an unpublished panel opinion found that "the provision of the Plan requiring that a claimant provide 'satisfactory

proof' of disability provides the necessary discretion" to an insurer such that a reviewing court should apply the arbitrary and capricious standard. *See Pinto v. Reliance Standard Life Ins. Co.*, No. 97–5297, 1998 WL 334448, slip. op. at 7 (3d Cir. May 28, 1998) (quoted in *Landau v. Reliance Standard Life Ins. Co.*, 1999 WL 46585, at *3 n. 2).)

My colleague Judge Reed, subsequent to the unpublished *Pinto*, but prior to the published *Pinto*, suggested that the adjective accompanying the word "proof" might play a role in the determination of the standard of review; before deciding to apply the *de novo* standard, Judge Reed noted that the policy before him required "written proof," not "satisfactory proof" (as in the *Pinto* policy) or "due proof." *McBride*, 1999 WL 301811, at *4. Judge Reed acknowledged the 1998 *Pinto* opinion, but opined that it was distinguishable from the case before him because of, *inter alia*, the differences in policy language. *Id.* at *4 n. 2. Parsing the exact state of the adjectival jurisprudence is unnecessary here. There being no controlling appellate authority to the effect that the phrase "written proof," utilized in the Vanguard plan, necessarily connotes the vesting of discretion in the plan administrator, the parties' stipulation that *de novo* is the proper standard of review seems unexceptionable.

cians to update their previous reports. A further alleged shortcoming of CNA's review process was its failure to enlist the assistance of a rheumatologist to review the file (Dr. Truchelut is an internist).

Ms. Taylor–Brown's displeasure with CNA is not limited to the insurer's evaluation of the evidence available. She notes also that the standard of disability applied in her case appears nowhere in the policy. Rather, the requirement of objective medical evidence was set forth only in correspondence related to Ms. Taylor–Brown's claim. Further, according to the plaintiff's submission, CNA has impermissibly required Ms. Taylor–Brown to "provide clinical evidence of the etiology of the 'condition' that renders [her] disabled," *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 443 (3d Cir.1997).

The argument that CNA has required a greater showing of disability than is required by the language of its policy is not without force. From this court's reading, no language in the policy itself demands "objective" proof of disablement. That the policy calls for something more than a treating doctor's conclusions on examination appears to be a proposition advanced only after Ms. Taylor–Brown filed her claim. To be sure, CNA (or any other insurer) must be given the opportunity to verify claims presented to it. However, there is no basis in the policy for CNA to claim that Ms. Taylor–Brown's claims have an inadequate prima facie foundation, considering the multiple specialists who have deemed her disabled after examining her or her file. CNA's correspondence questioning the persuasiveness of subjective complaints of pain is in tension with the Third Circuit's discussion of the issue in a Supplemental Security Income case: "Pain

itself may constitute a disabling impairment. Complaints of pain must be seriously considered, even where not fully supported by objective medical evidence. Where such complaints are supported by medical evidence, the ALJ may not discount them without contrary medical evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 n. 10 (3d Cir.1987) (citations omitted). Notably, a number of licensed physicians have found Ms. Taylor–Brown's complaints of pain compelling after examining her directly. The vetting process of impartial doctors' examinations lends credence to what CNA has discounted as Ms. Taylor–Brown's mere subjective complaints.

While CNA does seem overly resistant to the opinions of Ms. Taylor–Brown's treating physicians, *see Cohen v. Standard Ins. Co.*, 155 F.Supp.2d 346, 352 (E.D.Pa. 2001) ("[T]hat defendant relied upon the opinion of its non treating physicians over plaintiff's treating physicians is suspect."), the plaintiff's assertion that CNA is improperly requiring proof of the etiology of fibromyalgia appears misplaced. CNA concedes that Ms. Taylor–Brown does indeed have fibromyalgia, and so the causal mechanism of her disease is not at issue here. Rather, CNA questions whether the fibromyalgia has rendered Ms. Taylor–Brown totally disabled within the meaning of the policy.

While a number of physicians have opined that Ms. Taylor–Brown is disabled to the point of being unable to work, there is some evidence—not a great deal, but some—cutting in the opposite direction to raise an issue of fact. For example, the 1998 FCE cited by Dr. Truchelut found Ms. Taylor–Brown capable of "LIGHT DUTY work on an occasional basis."[5]

---

**5.** The FCE report hinted that Ms. Taylor–Brown might be capable of even more demanding work, but because the effort expended by the plaintiff during testing was allegedly "inconsistent," the report emphasized that its assessment was limited to "what Ms. Taylor–Brown was willing to demonstrate to us at this time."

And Dr. Burke, after evaluating Ms. Taylor–Brown to determine eligibility for Social Security benefits, seemed to imply that, notwithstanding her several ailments, the plaintiff might be able to perform "light work with limited lifting and bending." And in Ms. Taylor–Brown's deposition of August 23, 2000, she acknowledged that she can do some laundry, help with cooking, empty a dishwasher, and occasionally drive on short trips. There are factual questions here that require further sifting.[6]

**Defendant's motion for summary judgment**

■ Soon after Ms. Taylor–Brown moved for summary judgment, CNA reciprocated, seeking summary judgment that CNA's denial was reasonable and that the plaintiff had failed to state a claim. In the alternative, CNA suggests that any disability from which Ms. Taylor–Brown might suffer was caused by a mental or nervous condition, and so the maximum benefits period was twenty-four months.[7]

In support of the termination of benefits, CNA draws this court's attention to the contents of some of the medical records it reviewed: (1) the notation of one of the insurer's employees revealing that, when contacted by phone, Dr. Krauser—one of Ms. Taylor–Brown's health-care providers—acknowledged that Ms. Taylor–Brown was capable of returning to work as of January 8, 1997, assuming certain physical activities were avoided (Dr. Krauser denies saying this); (2) the report of Dr. John Kraus that, despite her symptoms, Ms. Taylor–Brown was capable of driving a car and undertaking the activities of daily living, except when symptoms were "particularly bad"; (3) Dr. Kraus's findings that certain of Ms. Taylor–Brown's physical capacities were not severely compromised; and (4) Dr. Burke's statement

---

6. The plaintiff has urged this court to reach a conclusion similar to that of my colleague Judge Katz in *Dorsey v. Provident Life & Accident Ins. Co.,* 167 F.Supp.2d 846 (E.D.Pa. 2001). Cheryl Dorsey, the plaintiff in that case, also sought LTD benefits for fibromyalgia. Judge Katz granted summary judgment for Ms. Dorsey, finding that Provident's decision to deny benefits was arbitrary and capricious. The case at bar shares a number of characteristics with *Dorsey.* In both cases: (1) an FCE exam showed some ability to perform basic physical tasks; (2) the insurer denied benefits based on reports of doctors who had not actually examined the claimant; and (3) the claimant provided evidence that FCEs are unreliable when determining fibromyalgia disability. There are, however, a few differences between Ms. Dorsey's and Ms. Taylor–Brown's cases that dissuade this court from granting summary judgment here: (1) Ms. Dorsey was granted Social Security benefits, while Ms. Taylor–Brown was turned down; (2) there are a number of ailments other than fibromyalgia from which Ms. Taylor–Brown suffers—some of which would not qualify for continued benefits but have been cited by her doctors as contributing to her disability; and (3) Ms. Taylor–Brown is only

to receive LTD payments if she is unable to perform *any* occupation, while Ms. Dorsey's policy required only that she be unable to perform her *own* occupation.

In resisting application of the *Dorsey* rationale to this case, the defendants have urged that if that case is to be considered by this court, then all of its underpinnings should be adopted, and so the arbitrary and capricious standard should supplant the *de novo* standard to which the parties have stipulated. As just discussed, this court has arrived at a conclusion different from that in *Dorsey* for the instant summary judgment motion. I consider the parties' stipulation to the *de novo* standard (discussed *supra* in footnote 4 and accompanying text) to be effective and binding. *See* January 30, 2002 memorandum/order granting the plaintiff leave to file the *Dorsey* opinion in support of her motion for summary judgment.

7. The policy language relied upon by CNA for this argument states: "This policy does not cover any loss caused by or resulting from ... [d]isability beyond 24 months after the Elimination Period if it is due to mental or emotional disorders of any type."

that it would be "very difficult" (but, arguably, not impossible) for the plaintiff to work. It is important to note that CNA's assertion that its coverage decision was "reasonable" misses the point; as Ms. Taylor–Brown points out, the focus of this court's *de novo* review is to determine whether the denial of benefits was *correct,* not whether it was reasonable. Regardless, while the factors listed in CNA's motion for summary judgment are certainly considerations for this court, they do not, for purposes of summary judgment, come close to establishing that Ms. Taylor–Brown was not disabled.

The argument that Ms. Taylor–Brown's ills stem from a mental or nervous condition rather than a physical malady is based on certain statements from various professionals who evaluated the plaintiff's medical condition: (1) Dr. Kraus wrote that "she has multiple significant stressors from the past which are most likely contributing to her pain"; (2) Dr. Fry of the Sleep Disorder Centers at Allegheny University reported that "[i]t seems likely that Mrs. Brown's severe sleep disorders are contributing to the pain of her fibromyalgia"; (3) Dr. Gilmour observed that "[s]he is distressed and discouraged by her physical pain, exhaustion, and the consequence of physical limitations"; and (4) Diane K. White, Vanguard's benefits manager, related: "I believe one of the areas of concern regarding CNA is the secondary diagnosis of fibromyalgia. However, Ms. Brown specifies this is not the reason for her total disability."

It is clear from reviewing the record that Ms. Taylor–Brown is contending both with fibromyalgia and with ancillary ailments. But the record does not establish as a matter of law that all of those ancillary ailments are "mental or emotional disorders," let alone that Ms. Taylor–Brown's claimed disability "is due to" such disorders. Accordingly, defendant is not entitled to summary judgment.

## Conclusion

After weighing the record and the arguments submitted by the parties, this court finds that there exist issues of material fact as to both the quantum of Ms. Taylor–Brown's disability and the primary source of that disability. Therefore, the motions for summary judgment filed by both the plaintiff and the defendant will be denied. An appropriate order accompanies this opinion.

## ORDER

For the reasons stated in the accompanying Opinion, it is hereby ORDERED that:

(1) Plaintiff Sharon Taylor–Brown's Motion for Summary Judgment (Docket # 14) is DENIED.

(2) Defendant Continental Casualty Company's Motion for Summary Judgment (Docket # 15) is DENIED.